■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BRIAN BRUNDAGE, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Westchester County (Rubin, J.), rendered October 16, 1979, convicting

him of robbery in the second degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial of a motion to withdraw his guilty plea. Judgment reversed, on the law, motion granted, guilty plea vacated, defendant's plea of not guilty reinstated, and matter remitted to the Supreme Court, Westchester County, for further proceedings. Defendant was indicted together with Ronald Harris, *inter alia,* for the crime of robbery in the second degree, it being alleged that on May 10, 1979, each aiding and abetting the other and each being actually present, did forcibly steal certain personal property from Leslie Benton. On August 2, 1979, in the course of a change of plea proceeding, the Assistant District Attorney addressed the defendant and called upon him to admit his guilt by reading the charge from the indictment: "MR. LACAVA [Assistant District Attorney]. Mr. Brundage [defendant], do you admit that in the City of Yonkers, County of Westchester, and State of New York, on or about May 10, 1979, that you, together with your co-defendant, Mr. Ronnie Harris, each of you aiding and abetting and acting in concert and each of you being actually present, did forcibly steal property from one Leslie Benton, that is jewelry and current monies of the United States of America?" In response, the defendant declined to admit the codefendant's participation in the alleged crime, stating, *"I could say what I did, I can't say what Ronnie did"* (emphasis added), and the following colloquy then ensued: "MR. LACAVA: *You have to admit the facts, you have to admit the facts that I have stated.* MISS POPKIN [defendant's attorney]: Your Honor, he has to admit the crime with which he is charged. * * * THE COURT: Was Ronnie with you at the time? THE DEFENDANT: *I can't say that either."* (Emphasis added.) The Assistant District Attorney stated that the indictment charged that the defendant and Harris committed the crime together and that it was unacceptable to him to accept the plea in any other manner. In response the court ruled that the plea must be taken in the language of the indictment or not at all. The following ensued: "THE COURT: The District Attorney wants a plea according to the indictment, and I agree with him. *I am not going to accept the plea other than what the indictment says.* If he does not accept it, then in that event we won't take the plea. MISS POPKIN: May I state for the record that Mr. Brundage is ready and willing to admit under oath all of the elements of the crime of robbery in the second degree including the presence of another person. MR. LACAVA: That is not acceptable to the People, your Honor. We would move for trial. MISS POPKIN: Your Honor, may I point out that the defendant has a right to plead to an indictment at any time. THE COURT: He is not pleading to the whole indictment. MISS POPKIN: Your Honor, he offers to plead to the entire indictment and also the charges of grand larceny and petty larceny. THE COURT: *He has to plead to the indictment as charged.* He is charged with the name of an individual with which he refuses to agree that he was with. MISS POPKIN: No, your Honor, that is a matter of evidence and not a matter of the charge. THE COURT: I will not accept this plea at this time. All right, we will adjourn it for another date." (Emphasis added.) After a short recess, the matter was called again, at which time the Assistant District Attorney called upon the defendant to admit the commission of the crime in the words of the indictment and the defendant then responded, "Yes" and when the Assistant District Attorney asked "Do you admit to those facts", he again answered "Yes." It is an essential substantive element of the crime of robbery in the second degree, under subdivision 1 of section 160.10 of the Penal Law, as charged here, that it be established that the defendant forcibly stole property when "[h]e [was] aided by another person actually present". The plea of guilty, here, is defective for the reason that, in the defendant's allocution, not only did he, by declining to admit the offense in the words of the indictment, make known to the court that its language did not apply to him, but that if his response was not so limited, "I could say what I

did," and thereafter explaining that "I can't say nothing about what Ronnie did", he specifically eliminated Harris as an aide in the crime. His disclaimer of any knowledge that Harris participated in the commission of the offense, coupled with a total failure to admit the presence of any other individual, renders the plea insufficient to spell out the crime of robbery in the second degree and is therefore a nullity. Furthermore, under the circumstances of this case, inquiry by the court beyond the quest for an affirmative response to the strictured words of the indictment might well have developed facts indicating that the defendant was not a participant in any crime whatsoever. Apart from the foregoing considerations, we are again called upon to note that although no specific catechism is required for the taking of a defendant's plea of guilty (*People v Nixon,* 21 NY2d 338, 353), it was, under the circumstances of this case, most inappropriate for the court to insist that the plea not be accepted unless the defendant responded in the affirmative to a recital of the allegations of this indictment after he had already indicated to the court by his responses that there was no substantive basis for a plea of guilty to the crime of robbery in the second degree. When this difficulty became apparent, it was incumbent upon the court to permit the defendant to describe in his own words how the crime was committed and not to restrict the proceedings to a rereading of the words of the indictment by the Assistant District Attorney. This procedure is mandated by the rule expressed in *People v Serrano* (15 NY2d 304, 308) as follows: "But, where, as is the usual case today, the trial court, before accepting the plea of guilty, properly inquires of the defendant as to the circumstances and details of the crime to which he is admitting his guilt, the mere mouthing of the word 'guilty' may not be relied upon to establish all the elements of that crime. In such case, the requisite elements should appear from the defendant's own recital and, *if the circumstances of the commission of the crime as related by the defendant do not clearly spell out the crime to which the plea is offered, then, the court should not proceed, without further inquiry,* to accept the guilty plea as a valid one." In *People v McDougle* (67 AD2d 989), this court, in vacating a plea of guilty where the County Court similarly failed to take the necessary precaution when the defendant's allocution did not contain an essential substantive element of the crime, held as follows (pp 989-990): "It is well established that before accepting a plea of guilty, the court should inquire of the defendant as to the circumstances and details of the crime to which he is admitting his guilt. The mere mouthing of the word 'guilty' may not be relied upon to establish all the elements of the crime. *The requisite elements should appear from the defendant's own recital* and, *if the circumstances of the commission of the crime as related by the defendant do not clearly spell out the crime to which the plea is offered, then the court should not proceed, without further inquiry, to accept the guilty plea as a valid one.* Of course, once advised that his version of the crime is not consistent with the charge to which he is pleading, a defendant might still wish to plead guilty to avoid the risk of conviction upon a trial of the more serious crimes charged in the indictment, and such a plea could be accepted by the court. The fact remains, however, that, before accepting a plea of guilty *where the defendant's story does not square with the crime to which he is pleading,* the court should take all precautions to assure that the defendant is aware of what he is doing *(People v Cullen,* 57 AD2d 903, 904; *People v Stone,* 54 AD2d 918, 919). It should also be noted that on June 22 the court likewise failed to make further inquiry when defendant made responses which indicated that essential elements of the crime of robbery were lacking in his version of the occurrence. Thus, on September 20 such inadequacy of June 22 was not only not rectified but was compounded." Error in the instant matter was further compounded by the proceedings which thereafter ensued. When the defendant appeared for sentence on September

10, 1979 the court declined to impose sentence because of defendant's protestations of innocence contained in the presentence report with which the court was furnished. At this point the Judge addressed the defendant and, referring to the report, said: "THE COURT: Yes, there is a statement in the pre-sentencing report, Mr. Brundage, to the effect that although you were present at the time of this robbery, that you have nothing to do with this robbery. However, the facts in the report show that immediately after the robbery you were found in the premises wearing some of the jewelry that was taken." The presentence report, to which reference was made, contained the defendant's assertion that he had been residing with the complainant for several weeks prior to the alleged robbery; that he had returned to the apartment with the codefendant after having been "high on reefer"; and that, while there, he entered the bedroom and "tried on" some of his jewelry and then fell alseep on the bedroom couch where he was found by the police. He denied having seen the codefendant tie up the complainant or assault him. The defendant contended that he "didn't do nothing." The presentence report also contains a statement attributed to the complainant in which he said that when the police entered the apartment, the defendant was found there alseep on the bedroom couch wearing two of his silver rings and a gold chain and that he had allowed him to take up residence with him on occasion during the past couple of weeks. When the matter was further pursued by the court, the following colloquy took place with the matter thereafter being adjourned to September 17, 1979: "THE COURT: You mean that you are innocent? THE DEFENDANT: Yes. THE COURT: All right. The defendant still says he is innocent. I will hold a hearing. MISS POPKIN: Your Honor, for the record, I have advised Mr. Brundage not to withdraw his plea. I do not believe he wishes to withdraw his plea, and I do not believe it would be in his best interest to withdraw his plea, so I will not advise him to do so. THE COURT: You are his attorney, so you have got to do what he wants you to do. You have said for the record that you don't think it's in his best interest, but he thinks it is. *The Court will order you to bring on a motion to withdraw his plea,* and I will set it down for a hearing. MISS POPKIN: I will restate what I understand Mr. Brundage to be saying, my understanding may be imperfect, but I understood him to say that he does not wish to withdraw his statement, that he is innocent, and I did not understand him to say that he wishes to withdraw his plea. If the Court wishes to adjourn this matter so I could discuss it with him further — THE COURT: All right, we will put it over." In the face of the defendant's protestations of innocence his attorney was protesting his guilt. The court accommodated counsel's request to adjourn the matter to "discuss it with him further" by commenting that "by that time you ought to be able to understand the situation." When the matter came on again on September 17, 1979 the defendant continued to profess his innocence as evidenced by the following portion of the record from which it clearly appears that the court again declared its awareness of the difficulty presented by the defendant's repeated claim of innocence which bestirred the court to *order* the bringing on of a motion to test the validity of the plea. "THE COURT: What do you want to do this morning? The Court is prepared to carry out the promise that I made here. Does the defendant wish to go ahead on the sentencing this morning? THE DEFENDANT: No, THE COURT: What do you want to do this morning? THE DEFENDANT: *Take my plea back.* THE COURT: I will not grant you that permission; There is an inconsistent statement in the pre-sentencing report. What I will do, I will hold a hearing. *Then* I will allow counsel to bring on a written motion to determine whether the Court should permit him to withdraw the plea. All right, I will withdraw the matter. Put the case over to October 3 to give you an opportunity to bring on your motion." (Emphasis added.) The defendant's repeated claims of innocence when considered in the

light of the complainant's statement that the defendant had taken up residence with him, coupled with his further observation that the defendant was found by the police asleep on a couch in the bedroom wearing his jewelry, could provide an arguable defense from which a jury could find that, apart from whatever the codefendant's conduct suggests, defendant, while enjoying the comforts and hospitality of the complainant's home as a house guest, had, as set forth in the probation report, "tried on" some of the jewelry, rather than that beyond a reasonable doubt he was a perpetrator of a robbery. Under the circumstances presented, it was indeed apparent to the court that an arguable defense that should be resolved at trial might exist, and for that reason sentence was not then imposed. An intoxicated person wearing his roommate's jewelry while lying asleep on the bedroom couch in a place where he resides must be viewed as an unlikely "robber" in any event. His quiet repose was interrupted by the presence of the police in the apartment which defendant shared with the complainant. Hardly conduct to be expected of one who just committed a violent crime. On September 10, 1979, after defendant's attorney stated that he had advised the defendant not to withdraw his plea since she did "not believe it would be in his best interest" to do so, the court ordered counsel "to bring on a motion to withdraw his plea." This order was repeated on September 17, 1979, whereupon a motion was brought for such relief by defendant's counsel. This application was made solely upon the affidavit of defendant's attorney who, as above noted, resisted making such motion until ordered to do so by the court, and in a supplementary affirmation by counsel in which she stated, *inter alia:* "Mr. Brundage appeared before Hon. Isaac Rubin on September 10, 1979 and professed innocence. Judge Rubin directed counsel to move to withdraw the plea. Counsel (myself) declined to so move. The matter was adjourned to September 17, 1979. On that date Mr. Brundage stated on the record that *he* wished 'to take my plea back', and *on that basis,* the instant Order was brought." It is a fundamental principle of law as expressed in *People v Dixon* (29 NY2d 55, 56) that a motion to withdraw a plea requires an affidavit by the defendant setting forth factual matter supporting his claims of innocence. Under the circumstances herein, such an affidavit submitted to a jury would have provided a basis for at least an arguable defense. The failure to present an affidavit by the defendant constituted a significant and crucial omission. The motion was denied by order dated October 10, 1979, which is the subject matter of this appeal. From this record before us, it is clearly established that the defendant and his counsel were acting at cross purposes from the inception of these plea taking proceedings. No matter how well motivated counsel may be in recommending a plea of guilty, the ultimate decision to so plead must be made by the defendant himself. In *People v Wilson* (15 NY2d 634, 635) the court, in remanding the matter to the County Court on the issue of defendant's mental and physical condition at the time of the plea where a similar conflict existed between a defendant and his counsel, held that such a difference of opinion between attorney and client over a motion to withdraw a plea required "the court to take notice of the extent to which defendant was then effectively represented by counsel". (See, also, *People v Rozzell*, 20 NY2d 712.) On this record it is manifest that the judgment of conviction should be reversed, the motion granted and the defendant's guilty plea vacated for the reason that the plea was substantively defective, and further because the defendant was deprived of the effective assistance of counsel from the outset, more particularly at that point in the proceedings when he finally gave an allocution which satisfied the court, the District Attorney and his own counsel. The matter is therefore remanded to Criminal Term for further proceedings. Gibbons, Margett, and O'Connor, JJ., concur.

Damiani, J. P., dissents and votes to affirm the judgment of conviction, with the following memorandum: The majority relies on *People v Serrano* (15 NY2d 304) and *People v McDougle* (67 AD2d 989) for its holding that the plea interposed by the defendant herein to the crime of robbery in the second degree (i.e., "aided by another person actually present" [see Penal Law, § 160.10, subd 1]) was invalid due to (1) defendant's failure to admit in the initial phase of his plea allocution that the named codefendant Harris, or any other named individual was present at the time of the crime and (2) the court's subsequent acceptance of the plea, notwithstanding this defect, through defendant's affirmative responses to a recital of the express allegations contained in the indictment. In my view, the majority has reached an erroneous conclusion due to its failure to discern the two distinct phases of the instant plea colloquy and its incorrect application of the decisions in *People v Serrano (supra)* and *People v McDougle (supra)* to the facts at bar. The Grand Jury of Westchester County indicted defendant and a codefendant, one Ronnie Harris, for the crimes of robbery in the second degree, grand larceny in the third degree, and petit larceny, in that "in the City of Yonkers * * * on or about May 10, 1979 each aiding and abetting the other and each being actually present did forcibly steal property from LESLIE BENTON", with whom defendant was then sharing an apartment, including jewelry and United States currency. On August 2, 1979 defendant, who had a previous criminal record, withdrew his plea of not guilty, and entered a plea of guilty to the crime of robbery in the second degree. The Assistant District Attorney called upon the defendant to admit to the facts alleged in the indictment as follows: "MR. LACAVA: Mr. Brundage, do you admit that in the City of Yonkers, County of Westchester, and State of New York, on or about May 10 of 1979, that you, together with your codefendant, Mr. Ronnie Harris, each of you aiding and abetting and acting in concert and each of you being actually present, did forcibly steal property from one Leslie Benton, that is jewelry and current monies of the United States of America?" Defendant answered: "I could say what I did, I can't say what Ronnie did." The following colloquy then ensued: "MR. LACAVA: You have to admit the facts, you have to admit the facts that I have stated. MISS POPKIN [defense counsel]: Your Honor, he has to admit the crime with which he is charged. THE COURT: It is the crime with which he is charged. Read that again to him, please. THE DEFENDANT: I can't say nothing about what Ronnie did. THE COURT: Was Ronnie with you at the time? THE DEFENDANT: I can't say that either." Despite the urging of the defense counsel that her client did not have to specifically name Harris in order to have his plea accepted, the Assistant District Attorney stated that the indictment charged that defendant and Harris committed the crime together and it was "not acceptable" for him to accept the plea without the defendant naming Harris as an actual participant in the robbery. In response to the Assistant District Attorney's protestation, the court ruled that the plea had to be taken in the language of the indictment, and failing that, it would not accept the plea. Specifically, the following colloquy took place: "THE COURT: The District Attorney wants a plea according to the indictment, and I agree with him. I am not going to accept the plea other than what the indictment says. If he does not accept it, then in that event we won't take the plea. MISS POPKIN: May I state for the record that Mr. Brundage is ready and willing to admit under oath all of the elements of the crime of robbery in the second degree including the presence of another person. MR. LACAVA. That is not acceptable to the People, your Honor. We would move for trial. MISS POPKIN: Your Honor, may I point out that the defendant has a right to plead to an indictment at any time. THE COURT: He is not pleading to the whole indictment. MISS POPKIN: Your Honor, he offers to plead to the entire indictment and also the charges of grand larceny and petty larceny. THE COURT: He has to plead to the indictment as

charged. He is charged with the name of an individual with which he refuses to agree that he was with. MISS POPKIN: No, your Honor, that is a matter of evidence and not a matter of the charge. THE COURT: I will not accept this plea at this time. All right, we will adjourn it for another date." In refusing to consent to the plea without defendant's naming his codefendant as a participant in the robbery, the Assistant District Attorney was clearly acting within his authority, and under the circumstances of this case (i.e., a plea to other than the entire indictment) his refusal to accept the plea as offered rendered the court without authority to accept the plea. As stated by this court in *Matter of Gribetz v Edelstein* (66 AD2d 788): "A District Attorney may dictate the terms under which he will agree to consent to accept a guilty plea and where his terms are not met, he may withhold such consent; the withholding of such consent by statutory mandate renders the court without authority to accept a plea to anything less than the entire indictment (see CPL 220.10; *Matter of McDonald v Sobel,* 272 App Div 455, affd 297 NY 679; *People v Evans,* 18 AD2d 1018; *Matter of Cosgrove v Kubiniec,* 56 AD2d 709)." It is this particular feature of the initial phase of the instant plea proceeding that immediately distinguishes this case from *People v McDougle* (67 AD2d 989, *supra),* cited by the majority. In *McDougle,* defendant was charged with the crime of robbery in the first degree. Although the defendant in *McDougle* did say during the plea colloquy that he was guilty of the crime of robbery in the first degree, he also gave responses to the court indicating that he did not have the intent to commit the crime, and did not know what he was doing at the time of the crime. Despite the utterance of these latter responses, which were "patently inconsistent" (p 989) with the charge to which he was pleading, the court immediately accepted the plea. Under those circumstances, this court reversed the judgment and vacated the plea, holding (p 990): "if the circumstances of the commission of the crime as related by the defendant do not clearly spell out the crime to which the plea is offered, then the court should not proceed, without further inquiry, to accept the guilty plea as a valid one." In the case at bar, the Assistant District Attorney refused to consent to the acceptance of the plea after defendant refused to state that he was aided by Ronnie Harris at the time of the robbery, as expressly charged in the indictment, and indeed the plea was never accepted by the court, in that objectionable form. The court specifically refused to accept the plea in that form and gave defense counsel a short second call or recess. Nevertheless, despite this crucial fact, and despite the admonition in *People v Nixon* (21 NY2d 338, 353) "that it is highly doubtful that a uniform mandatory catechism of pleading defendants should be required", the majority incants the decision of *People v Serrano* (15 NY2d 304) to support its proposition that the defendant could not, after conferring with his attorney during the court-ordered recess, return to the courtroom and enter a valid plea without further extended inquiry by the court. I disagree. The plea colloquy which occurred after the recess, clearly demonstrates a knowing and voluntary plea to all the essential elements of the crime. Specifically, the following occurred: "MR. LACAVA: Do you admit that in the City of Yonkers, County of Westchester, and State of New York, on or about May 10 of 1979, that you, together with Ronnie Harris, each of you aiding and abetting the other and each being actually present, did forcibly steal property from Leslie Benton, that is jewelry and current monies of the United States of America? THE DEFENDANT: Yes. MR. LACAVA: Do you admit to those facts? THE DEFENDANT: Yes. MR. LACAVA: Do you have any reservations about pleading guilty at this time? THE DEFENDANT: No. MR. LACAVA: Is your plea freely and voluntarily given? THE DEFENDANT: Yes. MR. LACAVA: Did anyone force you or coerce you into pleading guilty in this Court, either the District Attorney, the Sheriff's Office, or any police officer, inmates or anyone else? THE DEFENDANT: No."

*People v Serrano (supra)* does not mandate the conclusion reached by the majority. In *Serrano,* defendant withdrew his previously entered plea of not guilty, and interposed a plea of guilty to the crime of murder in the second degree. During the defendant's recital of the facts surrounding the commission of the crime, it appeared that his version of the events was more consonant with the lesser charge of manslaughter in the first degree. Nevertheless, the Trial Judge, *"instead of rejecting the change of plea or* advising the defendant that his admissions might very well not amount to the crime to which he pleaded guilty and inquiring further" (p 308; emphasis supplied), simply rejected defendant's version and immediately accepted the plea. The Court of Appeals held that Criminal Term erred in accepting the plea under those circumstances. In the case at bar, in contrast, as heretofore noted, the court did reject the plea when it learned that the defendant's initial responses were not acceptable to the People. More apposite to the facts at bar is *People v Nixon* (21 NY2d 338, *supra),* wherein the Court of Appeals decided six appeals involving the propriety of certain guilty pleas. The first of the six, *Nixon,* is particularly applicable to the facts at bar. There, defendant was charged with murder in the first degree and was represented by counsel at the plea. Defendant had concededly knifed the decedent in an incident involving his girlfriend. At the plea, the prosecutor described the offense in detail. Defendant answered in the affirmative to the court's question as to whether the Assistant District Attorney's statement was true and whether his decision to plead guilty was voluntary. At sentence, defendant stated to the court that he had not been the attacker, but rather the one who was attacked. The court promptly asked defendant if he wanted to withdraw his plea because of this potential defense. Although one of defendant's lawyers proceeded to move to withdraw the plea, another of defendant's lawyers asked for (and was granted) a recess, saying that defendant was confused. On the second call, defendant stated without qualification that he had no legal cause why judgment should not be imposed and he was thereupon sentenced. On appeal, the defendant in *Nixon* argued that the court never questioned him about the factual basis for the plea even after he indicated that he might have a defense. In rejecting that argument, and affirming the conviction entered upon the plea, the Court of Appeals stated (p 350): "[T]he record establishes the lawyer's active and informed role in the proceedings. This was no casual or hurried representation of a defendant suggesting that there had not been adequate consultation between lawyer and client. Third, the court on being advised of defendant's disclaimers of guilt promptly invited a withdrawal of the guilty plea. Only after a recess and further consultation between client and counsel did the sentence proceeding continue. This is potent evidence that effective representation by the lawyer was present and fully safeguarded. Moreover, defendant was charged with the most serious crime of murder in the first degree, making a lesser plea quite understandable. Lastly, he was a recidivist, already experienced in the ways of a criminal proceeding." The holding of *Nixon* is equally valid in the case at bar. Defendant herein was a recidivist who pleaded guilty to robbery in the second degree with the advice of counsel after a recess was requested by the latter and granted by the court. Although the defendant did not plead to a lesser crime than that charged in the indictment, he was promised during the plea proceeding, and actually received, a sentence of three to six years, which was the most lenient sentence that could have been imposed, considering his status as a predicate felon and the seriousness of the crime (i.e., a class C felony; see Penal Law, § 70.06, subds 3, 4). With respect to the second point raised by the majority, i.e., that the court's failure to grant defendant's subsequent motion to withdraw his plea "compounded" the initial error of the court in accepting the plea, it should be noted preliminarily that defendant's counsel on appeal (who

is not the same counsel that represented defendant at the plea and sentence) does not seriously argue in his brief that defendant's belated claim of innocence was sufficient to warrant the vacatur of the guilty plea and the restoration of his not guilty plea. Instead, counsel on appeal simply argues that since defendant initially hesitated in stating at the plea as to what his codefendant did at the time of the robbery, the court should not thereafter have accepted his plea, without further extended inquiry. Even assuming, *arguendo,* that this second point was properly before us on appeal, it would have to be rejected. The facts regarding this phase of the proceedings are as follows: After pleading guilty on August 2, 1979 defendant was interviewed by the Probation Department on August 28, 1979. During the course of the interview defendant admitted smoking marihuana in the apartment, entering the complainant's bedroom, and trying on some of the complainant's jewelry, before falling asleep on a living room couch. Defendant also admitted that codefendant Harris was in the apartment but denied that he, the defendant, ever assaulted the complainant, either alone, or with the help of Harris. On September 10, 1979 defendant appeared for sentencing. Criminal Term reminded the defendant of his exculpatory statement to the Probation Department, as well as the inculpatory parts thereof, and alerted him to the option of withdrawing his plea of guilty, if he was in fact, innocent. Defendant advised the court that he wanted to withdraw his plea, but due to his attorney's misunderstanding as to the true nature of his client's wishes, and the attorney's view expressed openly on the record that withdrawal would not be in his client's best interest, the court adjourned the case for a week. Specifically, the following colloquy occurred: "THE COURT: You mean that you are innocent? THE DEFENDANT: Yes. THE COURT: All right. The defendant still says he is innocent. I will hold a hearing. MISS POPKIN: Your Honor, for the record, I have advised Mr. Brundage not to withdraw his plea. I do not believe he wishes to withdraw his plea, and I do not believe it would be in his best interest to withdraw his plea, so I will not adivse him to do so. THE COURT: You are his attorney, so you have got to do what he wants you to do. You have said for the record that you don't think it's in his best interest, but he thinks it is. The Court will order you to bring on a motion to withdraw his plea, and I will set it down for a hearing. MISS POPKIN: I will restate what I understand Mr. Brundage to be saying, my understanding may be imperfect, but I understood him to say that he does not wish to withdraw his statement, that he is innocent, and I did not understand him to say that he wishes to withdraw his plea. If the Court wishes to adjourn this matter so I could discuss it with him further — THE COURT: All right, we will put it over." On September 17, 1979 defendant appeared before the court with his attorney, and specifically asked to withdraw his plea. At that point, the court afforded defense counsel time to prepare formal motion papers to withdraw the guilty plea. Subsequently, by order to show cause, dated September 24, 1979 and returnable October 9, 1979, defense counsel moved to vacate his client's guilty plea. The supporting papers submitted with the motion consisted solely of the attorney's affirmation which essentially recited the chronological history of the case, and concluded by stating that "because Mr. Brundage denies guilt", the plea should be withdrawn, "and the original plea of not guilty be reinstated." In opposition to the motion, the Assistant District Attorney pointed to the fact that (1) the plea minutes clearly demonstrated that defendant, a recidivist, admitted the crime freely and openly, with the advise of counsel, and had been promised a lenient sentence; and (2) the defendant's claim of innocence was deficient in view of the "absence of any affidavit from the defendant himself" protesting his innocence. Thereafter, by order dated October 10, 1979, Criminal Term denied defendant's motion, stating, *inter alia:* "Defendant was not a novice in criminal affairs and was, therefore,

schooled in the nature of criminal proceedings. Only after consultation with his attorney and detailed explanations by the court did defendant tender his guilty plea. There is, therefore, no basis for assuming that defendant was not cognizant of the legal implications and personal repercussions of his action." With respect to motions to withdraw guilty pleas, based on subsequent claims of innocence, it is true that the Court of Appeals has stated in *People v Nixon* (21 NY2d 338, 355, *supra*) that "the court should be quick to offer the defendant an opportunity to withdraw his plea and at the very least conduct a hearing." In *People v McClain* (32 NY2d 697, 698), decided subsequent to *Nixon,* the court specifically stated that "Although usually necessary in the normal case we do not say that a hearing is always necessary." However, the foregoing language employed in *McClain* is not limited to those situations where the motion to withdraw is granted without a hearing. The court in *McClain* cited *People v Dixon* (29 NY2d 55) with approval. In *Dixon,* a defendant pleaded guilty to assault and the plea minutes indicated a knowing and intelligent plea. Thereafter he protested his innocence and the court appointed new counsel and directed the latter to file motion papers. In his own affidavit in support of the motion the defendant in *Dixon* alleged that he was innocent and pleaded guilty because his counsel told him that he did not have a chance of proving his innocence. The motion was *denied without a hearing,* and the judgment of conviction was affirmed by both the Appellate Division, First Department, and thereafter by the Court of Appeals. In affirming, the Court of Appeals stated (pp 56-57): "No factual matter was presented in support of these assertions. Thus, the court had before it only the unsupported allegations of the defendant and was confronted solely with an issue of credibility. That issue was resolved against the defendant when the court denied the motion to withdraw the guilty plea. Defendant, with a record of 12 prior convictions, did not contend that his plea was the result of mistake or misunderstanding as contended in *McKennion (supra)* nor does he contend that it was not made voluntarily following consultation with his first attorney. (See *People* v. *Nixon,* 21 N Y 2d 338; cf. *People* v. *Serrano,* 15 N Y 2d 304; *People* v. *Beasley,* 25 N Y 2d 483.) Moreover, the plea minutes show that defendant not only accepted the plea but also admitted his participation with his codefendant in the robbery and the assault which followed. The minutes also show that the admission of guilt was not accompanied by any protestations of innocence. (Cf. *North Carolina* v. *Alford,* 400 U.S. 25.) A defendant is not entitled to withdraw his guilty plea based on a subsequent unsupported claim of innocence, where the guilty plea was voluntarily made with the advise of counsel following an appraisal of all the relevant factors including defendant's numerous prior convictions, the likelihood of eyewitness testimony confronting him at a trial and the hope of a reduced charge and sentence. (*Brady* v. *United States,* 397 U.S. 742, 756-757.) Under the circumstances of this case, the denial of the motion to withdraw the guilty plea was not an abuse of discretion. (Code Crim. Pro., § 337; *People* v. *Phillips,* 33 A D 2d 893, affd. 27 N Y 2d 892.)" In my view, the defendant herein stands in no better position than *Dixon.* He is a recidivist who pleaded guilty to the crime of robbery in the second degree with the advice of counsel and received the most lenient sentence allowed by law. The court afforded defendant the opportunity to submit a formal motion to withdraw his plea which he could have supported by an affidavit containing factual allegations concerning his belated claim of innocence. Defendant's failure to submit such an affidavit is totally unexplained. The majority concedes that defendant's failure to submit an affidavit setting forth factual matter supporting his claim of innocence and his motion to withdraw his plea "constituted a significant and crucial omission". Nevertheless the majority, citing *People v Wilson* (15 NY2d 634) attempts to circumvent *Dixon* by holding that the defendant

was deprived of the effective assistance of counsel, commencing with the latter's advice to her client during their initial conference to plead to the language of the indictment, and continuing through her remarks to the court on September 10, 1979. Apart from the fact that neither defendant nor his appellate counsel has ever raised or even suggested a claim of ineffective assistance of counsel during the plea proceedings, there is nothing in the record to support such a claim. The acts complained of by the majority consisted of nothing more than legitimate advise by counsel to her client to plead guilty to the language of the indictment in return for a lenient sentence, and a remark by counsel made on September 10, 1979 reflecting her (1) belief (albeit a mistaken one) that her client did not want to withdraw his plea, and (2) opinion that a motion to withdraw would not be in her client's best interests. Nor does the holding of *People v Wilson (supra)* support the position reached by the majority. In *Wilson* defendant entered a plea of guilty to the crime of attempted grand larceny in the second degree, but at sentence indicated to the court that he wished to withdraw his plea of guilty because he was sick at the time of his plea and did not fully understand the proceedings. The court denied the application summarily. The defendant's attorney then told the court (p 635) that although defendant had been sick "'for a period of time'", he did understand "'the nature of the proceedings and the questions that were put to him'". The court repeated its ruling denying the motion to withdraw summarily. Defendant again stated that he had been sick during the plea, and that after he had recovered, he asked his attorney to withdraw his plea. Defendant's attorney countered by stating to the court that although his client had been sick, he had advised him of a possibility of adjourning the sentence, but that nothing was said about withdrawing the plea. The Court of Appeals reversed and ordered a hearing on defendant's application to withdraw his guilty plea and went on to say (p 635): "On such application defendant may be represented by a lawyer to be retained by him or, lacking this, by a lawyer to be assigned by the court. The record *** does show such a difference of opinion between attorney and client over the motion to withdraw the plea as to require the court to take notice of the extent to which defendant was then effectively represented by counsel." In *Wilson,* defendant's counsel openly expressed his disagreement on the merits with his client's argument regarding the latter's physical and mental condition at the time of the plea. In the case at bar, defense counsel initially misunderstood what her client was attempting to do, and then merely stated to the court, without any reference to the merits of her client's application, that she did not think an application to withdraw was in her client's best interest, and that he would prefer an adjournment to discuss the matter with her client. A week later, on September 17, 1979, when her client's wishes were clearly crystalized, defense counsel did not in any way resist in making the motion (cf. *People v Rozzell,* 20 NY2d 712). It is clear, on this record, that Criminal Term quite properly denied defendant's motion to withdraw his guilty plea and did not "further compound" any initial error in the proceedings. Accordingly, I respectfully dissent and vote to affirm the judgment of conviction.